Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michelle Quintana, individually and on behalf of all others similarly situated, | Case No. 8:23-cv-00583 |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| Franchise Group, Inc. and American Freight, LLC, | |
| *Defendants.* | |

# Table of Contents

I.    Introduction...........................................................................................1

II.   Parties. ...............................................................................................1

III.  Jurisdiction and Venue. ......................................................................2

IV.   Facts...................................................................................................2

    A.    Defendants advertise unassembled furniture without clearly disclosing that it is unassembled.................................................2

    B.    Defendants have a duty to disclose that the furniture is unassembled..........8

    C.    Defendants' advertisements are misleading to reasonable consumers, and are illegal....................................................................8

    D.    Other furniture sellers clearly disclose whether a product needs assembly...............................................................................11

    E.    Defendants breached their contract......................................12

    F.    Defendants' misrepresentations harm consumers. ......................13

    G.    Plaintiff was misled and harmed by Defendants' misrepresentations and omissions.......................................................14

    H.    No adequate remedy at law. ...............................................14

V.    Class Action Allegations.....................................................................15

VI.   Causes of Action. ...............................................................................16

    First Cause of Action: Violation of California's Consumer Legal Remedies Act .................................................................................16

    Second Cause of Action: Violation of California's False Advertising Law ...........18

    Third Cause of Action: Violation of California's Unfair Competition Law...........19

    Fourth Cause of Action: Breach of Contract .................................................21

    Fifth Cause of Action: Unjust Enrichment/Quasi-Contract .................................22

VII.  Prayer for Relief. ...............................................................................22

## I.    Introduction.

1.     California law prohibits "advertising furniture without clearly indicating that it is unassembled if that is the case." Cal. Bus. & Prof. Code § 1770(a). This is because consumers generally expect that—absent a clear indication otherwise—furniture comes assembled. As a result, it is deceptive, and illegal, to advertise unassembled furniture without clearly stating that it is unassembled.

2.     Defendants Franchise Group, Inc. and American Freight, LLC, (collectively "Defendants" or "American Freight"), advertise and sell furniture, through both their brick-and-mortar and online stores. The furniture Defendants advertise and sell is unassembled. But they do not provide any indication—much less a clear one—that this is the case.

3.     Thus, when reasonable consumers like Plaintiff purchase furniture from Defendants, they expect it to be assembled. So, when they discover that it is actually unassembled, they are surprised and disappointed. And they are forced to spend time and money assembling the piece—expenses they did not factor into their purchasing decision.

4.     American Freight's behavior violates California consumer protection laws and harms consumers. Plaintiff brings this lawsuit to put an end to it, and to seek compensation for all consumers who, like Plaintiff, were harmed by this deceptive and illegal conduct

## II.    Parties.

5.     Plaintiff Michelle Quintana resides in Tustin, California. The proposed class includes citizens of every State within the United States.

6.     Franchise Group, Inc. is a Delaware company with its headquarters at 109 Innovation Court, Suite J, Delaware, OH 43015.

7.     American Freight, LLC, is a Delaware limited liability company with its headquarters at 109 Innovation Court, Suite J, Delaware, OH 43015.

### III.  Jurisdiction and Venue.

8.    This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

9.    This Court has personal jurisdiction over Defendants.  Defendants do business in California.  They advertise and sell furniture (the "Products") in California, and serve a market for their Products in California.  Due to Defendants' actions, their Products have been marketed and sold to consumers in California, and harmed consumers in California.

10.    Plaintiff's claims arise out of Defendants' contacts with this forum.  Due to Defendants' actions, Plaintiff purchased one of Defendants' Products in California, and was harmed in California.

11.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d).  Defendants would be subject to personal jurisdiction in this District if this District were a separate State.  Defendants advertise and sell their Products to customers in this District, serve a market for their Products in this District, and Plaintiff's claims arise out of Defendants' contacts in this forum.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

### IV.  Facts.

#### A.    Defendants advertise unassembled furniture without clearly disclosing that it is unassembled.

12.    Defendants advertise and sell furniture.  Defendants sell directly to consumers online and in stores, through their website AmericanFreight.com, and through brick-and-mortar American Freight stores.

13.    Images from Defendants' brick-and-mortar store, and online store are below:

2



14. Defendants' furniture is unassembled. But when Defendants advertise their unassembled furniture, they do not clearly disclose that the furniture is unassembled.

15. For example, the website product pages for Defendants' Products advertise furniture for sale:



16.     While the product pages contain extensive details about each item (such as the dimensions, care instructions, and description), there is no indication that the Product comes unassembled.  Instead, the product pages only show images of assembled furniture.

17.     For example, below are screenshots from the product page for the Martin Grey 5-piece dining set, which is sold unassembled.  The product page depicts and describes the Product in detail, but fails to disclose that it is unassembled:



5

| Specifications | |
| --- | --- |
| **COLOR FAMILY** | Gray |
| **CUSTOM DIMENSIONS** | Table: Length 48 x Width 36 x Height 30<br>Chair: Length 22 x Width 19 x Height 38 |
| **FINISH** | Black/Grey |
| **MATERIAL** | Veneer |
| **STYLE** | Casual |
| **WARRANTY** | 1 Year Manufacturers Limited Warranty |
| **COLLECTIONS** | 5pc. Collection |
| **DINING HEIGHT** | Dining Height |

## Care

Always use a slightly damp lint-free cloth to polish/dust wood furniture on a weekly basis. Keep wood furniture away from direct sunlight and vents to prevent moisture loss and fading. Use felt on accessories that you place on your furniture for decoration to prevent scratching. Use placemats and coasters under hot and cold items such as plates and glasses to prevent rings in the wood. Always wipe up food and liquid spills immediately.

## Construction

Elements



• Acacia wood and engineered wood with mango veneer
• Butt joint and corner block reinforcements
• Espresso wood finish
• Solid wood framing
• Upholstered chair seat with foam filling in cushion

6

18.     Further, nothing in the checkout process indicates that the furniture piece is unassembled:



19.     Thus, the customer can select an item, view the advertisement on a product page, and check out without ever learning that the Product will be provided unassembled.

20.     The same is true of Defendants' brick-and-mortar locations.  Defendants display and advertise furniture in their showrooms.  That furniture is shown assembled. But Defendants do not disclose that the furniture that they sell is unassembled.

21.     Thus, customers purchase the Products online and in stores under the mistaken belief that the furniture comes assembled, and are surprised to find that the Products require assembly.

**B.      Defendants have a duty to disclose that the furniture is unassembled.**

22.      The California Consumer Legal Remedies Act prohibits "unfair methods of competition and unfair or deceptive acts or practices … in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  The enumerated list of prohibited practices includes "advertising furniture without clearly indicating that it is unassembled if that is the case."  Cal. Bus. & Prof. Code § 1770(a)(11).  Thus, when advertising their unassembled furniture, Defendants have a duty to disclose to consumers that it is unassembled.

23.      In addition, Defendants should have disclosed because they had exclusive knowledge of the fact that the furniture was unassembled.  Defendants actively concealed that fact, by failing to disclose that it was unassembled and by only showing assembled Products in their advertisements.  Defendants also made partial representations that are misleading, by showing only assembled Products.  This led consumers to believe that the Products were assembled.

**C.      Defendants' advertisements are misleading to reasonable consumers, and are illegal.**

24.      Advertising and selling unassembled furniture without clearly disclosing that it is unassembled is misleading to reasonable customers.  Reasonable consumers expect furniture to be assembled unless the fact that it is unassembled is clearly disclosed to them.  This is why the CLRA expressly prohibits advertising furniture without clearly disclosing that this is the case.  So Defendants' customers are surprised—and disappointed—when the furniture they receive is unassembled.  They are then forced to spend time and money assembling the piece.  Added cost can be significant; according to one example source, assembly costs for furniture average at least $110 per piece, and can cost upwards of $450.[1]

---

[1] https://www.angi.com/articles/furniture-assembly-cost.htm

25.     Failing to disclose that the furniture is unassembled is also anti-competitive. Unassembled furniture can be sold at lower cost than assembled furniture, and with lower delivery fees.  When comparison shopping, customers may erroneously compare the price of unassembled furniture to assembled furniture, and be misled about whether a product is cheaper than a competing product.

26.     For example, assume Store A sells unassembled furniture (without clearly disclosing it) for $100.  Assembly costs an additional $100.  Thus, the true cost of the furniture from Store A, after assembly, is $200.  Store B sells the same furniture, assembled, for $150.  In this scenario, a customer may wrongly believe that Store A is cheaper, because $100 is cheaper than $150.  But when the cost of assembly is added, Store B is actually cheaper.  Thus, by failing to disclose that its furniture is unassembled, Store A misleads customers about the true price of its products.  This artificially increases demand for Store A's furniture, and allows it to charge more for the furniture than it could if it clearly disclosed that the furniture was unassembled.

27.     Moreover, Defendants know that their advertisements mislead consumers. Customers have posted multiple reviews complaining that they were surprised to receive unassembled furniture, because they believed that the furniture would be assembled.

28.     Examples of such reports, on the Better Business Bureau's website, are included below:



Nicole L

★☆☆☆☆                                                                                                    03/05/2020

Prices were great because the furniture does NOT come assembled! People employed at the facility are poor quality staff,they are so busy on their phones and joking around at the front desk, rather than focusing on making sure that orders received are actually delivered. No follow up whatsoever. Also placing warranties NOT asked for on the financing bill. The subcontracting company they use to deliver furniture, is even worse, and they never delivered after 4 scheduled times. The regional manager handling the matters is just as incompetent and ignorant in how to handle a chain of furniture stores and should be demoted or replaced. I will NEVER step foot in this ridiculous operation again and will strive to make sure no one else wastes their time.

Alicia C
06/27/2021

★☆☆☆☆

I am out so much money. The delivery drivers couldn't get my sofa into my very large basement. They damaged several walls, ceiling, banister, and door trying to make it fit. I ended up sending the sofa back for a refund. We found the exact same sofa and my son easily got it down without a single issue. The doors, stairs and hallway are big enough. I very specifically asked my sales person of the table would be assembled or if there would be a fee. He assured me it would be assembled. He actually said "I promise". Once the table was delivered they said they wouldn't assemble without payment. I gave them all the cash I had for the delivery charge and extra for a tip. About $160. ($120 for delivery and $40 tip). Turns out that should have been the assembly fee. Now that I am assembling the table I see that it's not only the wrong table but the seats are completely apart. The Cushion isn't attached and doesn't have holes to screw in the seat together. What in the world?!?!? When calling the store they said there's nothing they can do.

29.     Defendants are aware of these complaints.  Like other large producers of consumer products, Defendants monitor and keep track of consumer reviews and complaints.  In fact, Defendants have reviewed and posted comments in response to complaints on the Better Business Bureau's website.

30.     For example:

**American Freight Response**
09/23/2020

We are sorry to hear you are having troubles with your purchase and would like to help as best we can. Please call 1-866-388-6333 so we can put you in direct contact with the Regional Manager of the store location you purchased from. Thank you.

10

**JACQUELYN h**
⭐☆☆☆☆                                                          12/20/2022

I went to American Freight on 12/13/22 looking for a dinner room table and two bedroom dressers. The sales rep told me that he had the tale in house ,but would have to order the dressers from the Stone Mountain location. I was advised that the day of delivery ( 12/16/22) that everything would e delivered at once. The day of delivery I had to call the store just to find out the dressers were not ordered on the initial day that I was told they would e. The sales rep said me the delivery guys were told the morning of the 16th to go pick up the dressers from the Stone Mountain store and that everything would e delivered later that afternoon. I called the store around 6pm because I had not heard from the delivery guys. The sales rep said oh they still waiting to go wo Stone Mountain, but your delivery will happen today. About 9:30 that night the delivery guys called and stated they only had the Dinette set and didn't know anything about a dresser set and they were never told anything about it. They brought the Dinette set and drop the it off and I said are you not going to assemble the tale. I was told that they don't assemble, but the sales rep told me that did assemble but I would have to pay $60. I paid the $60 and the guys put the tale together and now it's past 10pm. I forgot to also state one of the pieces was broken on the tale and they were suppose to come ack on Saturday to replace. That didn't happen. I would advise no one to do business with this company, because they LIE and have no INTEGRITY. BEWARE

**American Freight Response**                                    12/30/2022

We are sorry that you had an issue with your purchase. Store management indicated that a refund was processed for the dressers to the original tender. We appreciate you bringing the assembly issue to our attention and will research and address per our process.

### D.    Other furniture sellers clearly disclose whether a product needs assembly.

31.    Unlike Defendants, their competitors, who also sell unassembled furniture, clearly disclose that a product needs assembly when selling unassembled furniture.

32.    For example, Wayfair sells furniture through its website, some of which are unassembled.  For its unassembled furniture products, Wayfair clearly discloses on the product page: "assembly required."



33.    Similarly, Overstock.com sells furniture through its website.  For unassembled items, the product page indicates "assembly required":



34.    Defendants, in contrast, make no such disclosure.  This misleads customers into believing that no assembly is required.

**E.    Defendants breached their contract.**

35.    When Ms. Quintana purchased and paid for the Product that she bought as described above, she accepted an offer that Defendants made, and thus, a contract was formed at the time that she made the purchase.  At the time that Ms. Quintana made the

purchase, the offer was to provide the assembled Product to Ms. Quintana for the listed purchase price.

36.  Plaintiff and Defendants entered a contract.

37.  The assembled nature of the Product, and the Product price, were specific and material terms of the contract.

38.  Plaintiff performed her obligation under the contract by paying Defendants the listed price.

**F.  Defendants' misrepresentations harm consumers.**

39.  As explained above, reasonable consumers who purchase furniture expect that that furniture will be assembled, unless there is a clear indication otherwise. Accordingly, because Defendants do not clearly indicate that their furniture is unassembled, their customers reasonably believe, and expect, that the furniture will be assembled.  And assembled furniture is worth more than unassembled furniture; after all, it costs time and money to assemble furniture.  So, by advertising furniture without clearly indicating that it is unassembled, and then providing that furniture unassembled, Defendants deprive customers of the benefit of their bargain.  Customers receive something worth less than what they bargained for.  This harms consumers.

40.  In addition, as explained above, advertising unassembled furniture without clearly disclosing that it is unassembled artificially increases demand for, and customers' willingness to pay for, the furniture in question.  Consumers are willing to pay more for assembled furniture than they are for unassembled furniture.  After all, assembling furniture can cost hundreds of dollars and requires significant effort.  Accordingly, Defendants' misrepresentations and omissions artificially increase the demand for their Products, allowing Defendants to charge a price premium.  This harms consumers, who are forced to pay Defendants' artificially higher prices.

**G.    Plaintiff was misled and harmed by Defendants' misrepresentations and omissions.**

41.    On May 20, 2021, Ms. Quintana bought the Martin Grey 5-piece Dining Set from Defendants.  She purchased the Product from Defendants' website, AmericanFreight.com, while living in Tustin, California.  Ms. Quintana read and relied on the representations on the website (which displayed an assembled dining set) that the Product would be assembled.  The product page and checkout process did not disclose anywhere that the dining set that Ms. Quintana would receive was unassembled.

42.    Ms. Quintana would not have purchased the furniture if she knew that the Defendants' Products were unassembled.  Moreover, if Defendants clearly disclosed that their Products were unassembled, they would be forced to charge less for them. Accordingly, Ms. Quintana was harmed as a result of Defendants' misrepresentations and omissions.

43.    Ms. Quintana faces an imminent threat of future harm.  She likes Defendants' Products, and would purchase them again if she could be sure that they would come assembled at the currently advertised prices.  But without an injunction, she cannot trust that Defendants will comply with the consumer protection statutes.

**H.    No adequate remedy at law.**

44.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

45.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.  In addition, the remedies at law available to Plaintiff are

not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.    Class Action Allegations.**

46.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons, who within the applicable statute of limitations period, purchased one or more Products from Defendants.

- <u>California Subclass</u>: California residents who, while in the state of California and within the applicable statute of limitations period, purchased one or more Products from Defendants.

47.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

48.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

49.    Class members can be identified through Defendants' sales records and public notice.

### *Predominance of Common Questions*

50.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendants violated California's consumer protection statutes;

(2) whether Defendants' advertisements made adequate disclosures;

(3) whether Defendants breached their contracts;

(4) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

51.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Products.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

52.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Causes of Action.

### First Cause of Action:

### Violation of California's Consumer Legal Remedies Act
### (By Plaintiff and the California Subclass)

53.    Plaintiff incorporates each and every factual allegation set forth above.

54.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

55.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

56.    Plaintiff and the subclass have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

57.    The conduct alleged in this Complaint was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

16

58.     As alleged more fully above, Defendants violated, and continue to violate, Section 1770(a) of the California Civil Code.

59.     Defendants violated, and continue to violate, Section 1770(a)(9) of the California Civil Code by "advertising goods or services with the intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). Defendants depict assembled Products on their website and in stores, and fail to clearly disclose that their Products come unassembled. Defendants advertise assembled Products without the intent to sell them assembled.

60.     Defendants violated, and continue to violate, Section 1770(a)(11) of the California Civil Code by "advertising furniture without clearly indicating that it is unassembled if that is the case." Cal. Civ. Code § 1770(a)(11). Defendants do this by advertising their Products without clearly indicating that the Products are unassembled, when in fact they are unassembled.

61.     Defendants' misrepresentations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendants knew, or should have known through the exercise of reasonable care, that these statements and omissions were inaccurate and misleading.

62.     Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendants' misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision.

63.     In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

64.     Defendants' misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

65.     Plaintiff and subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if

they had known that they were not assembled, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendants' misleading representations and omissions, or (c) they did not receive the benefit of their bargain because the Products they received were less valuable than what they paid due to the lack of assembly.

66.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the subclass, seeks injunctive relief.

67.    CLRA § 1782 NOTICE.  On March 17, 2023, a CLRA demand letter was sent to Defendants' Ohio headquarters via certified mail (return receipt requested), that provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here.  Defendants do not have a California headquarters.  If Defendants do not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

68.    A CLRA venue declaration is attached.

## Second Cause of Action:

### Violation of California's False Advertising Law
### (By Plaintiff and the California Subclass)

69.    Plaintiff incorporates each and every factual allegation set forth above.

70.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

71.    As alleged in detail above, Defendants have falsely advertised their Products by misleadingly representing that the Products are assembled, and omitting any disclosures that the Products are unassembled.  The representations and omissions are misleading because the Products are unassembled.

72.    As alleged in detail above, Defendants' representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew,

or reasonably should have known, that their representations and omissions were misleading.

73.    As alleged in detail above, Defendants' representations and omissions were material.  Thus, subclass-wide reliance can be inferred.

74.    As alleged in detail above, Defendants' representations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

75.    Plaintiff and subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that they were not assembled, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendants' misleading representations and omissions, or (c) they did not receive the benefit of their bargain because the Products they received were less valuable than what they paid due to the lack of assembly.

**Third Cause of Action:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Subclass)**

76.    Plaintiff incorporates each and every factual allegation set forth above.

77.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

78.    Defendants have violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

79.    Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

*The Deceptive Prong*

80.    As alleged in detail above, Defendants' representations and omissions

regarding their Products are false and misleading. Defendants advertise unassembled furniture without clearly indicating that it is unassembled.

81.    Defendants' representations and omissions were misleading to Plaintiff and other reasonable consumers.

82.    Plaintiff relied upon Defendants' misleading representations and omissions, as detailed above.

### The Unfair Prong

83.    As alleged in detail above, Defendants committed "unfair" acts by advertising unassembled Products without indicating that they were unassembled.

84.    Defendants violated established public policy by violating the CLRA and the FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

85.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendants' conduct. There is no public utility to misrepresenting that furniture is assembled, or failing to clearly disclose that furniture is unassembled. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers about consumer products only injures healthy competition and harms consumers.

86.    Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendants' representations were deceptive to reasonable consumers like Plaintiff.

87.    Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

88.    For all prongs, Defendants' representations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Defendants' Product. Defendants' representations and omissions were a substantial factor in Plaintiff's purchase decision.

89.     In addition, subclass-wide reliance can be inferred because Defendants' representations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Defendants' Products.

90.     Defendants' representations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

91.     Plaintiff and subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that they were not assembled, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendants' misleading representations and omissions, or (c) they did not receive the benefit of their bargain because the Products they received were less valuable than what they paid due to the lack of assembly.

## Fourth Cause of Action:

### Breach of Contract

### (By Plaintiff and the Nationwide Class)

92.     Plaintiff incorporates each and every factual allegation set forth above.

93.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

94.     Plaintiff and class members entered into contracts with Defendants when they placed orders to purchase Defendants' Products.

95.     The contracts provided that Plaintiff and class members would pay Defendants for the Products ordered.

96.     The contracts further required that Defendants provide Plaintiff and class members with assembled Products.  This was a specific and material term of the contract.

86.     Plaintiff and class members paid Defendants for the Products they ordered, and satisfied all other conditions of their contracts.

21

97.     Defendants breached the contracts with Plaintiff and class members by failing to provide Products that were assembled.  Instead, they were unassembled.

98.     As a direct and proximate result of Defendants' breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

## Fifth Cause of Action:

### Unjust Enrichment/Quasi-Contract

### (By Plaintiff and the California Subclass)

99.     Plaintiff incorporates each and every factual allegation set forth above.

100.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

101.    Plaintiff and subclass members conferred a tangible and material economic benefit upon Defendants by purchasing the Products.

102.    In exchange for the purchase price, Defendants provided an unassembled Product, without indicating to consumers that it was unassembled.  Defendants knew and appreciated the benefit they incurred from consumers purchasing the Products.

103.    Thus, Defendants are aware of, and have retained, the unjust benefit conferred upon them by Plaintiff and subclass members.

104.    Defendants received a direct and unjust benefit, at Plaintiff and subclass members' expense.

105.    Plaintiff and the subclass seek restitution.

**VII.   Prayer for Relief.**

106.    Plaintiff seeks the following relief individually and for the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiff as representative for the proposed class, and appointing her counsel as lead counsel for the proposed class;
- A judgment in favor of Plaintiff and the proposed class;

- Damages, treble damages, statutory damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just relief;
- An order awarding Plaintiff and all other class members damages in an amount to be determined at trial for the wrongful acts of Defendants;
- Pre- and post-judgment interest on all amounts awarded;
- Injunctive relief as pleaded or as the Court may deem proper;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

## Demand For Jury Trial

107.   Plaintiff demands a jury trial on all issues so triable.

Dated: April 3, 2023                        Respectfully submitted,

                                            By: /s/ Christin Cho

                                            Christin Cho (Cal. Bar No. 238173)
                                            christin@dovel.com
                                            Simon Franzini (Cal. Bar No. 287631)
                                            simon@dovel.com
                                            DOVEL & LUNER, LLP
                                            201 Santa Monica Blvd., Suite 600
                                            Santa Monica, California 90401
                                            Telephone: (310) 656-7066
                                            Facsimile: (310) 656-7069

                                            *Attorneys for Plaintiff*